# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLEE KENDRICK GOLDSMITH,<br><br>        Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No.: SA CV 17-00501-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER** |

## BACKGROUND

Plaintiff filed applications for disability benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Plaintiff's applications were denied initially and on reconsideration. An Administrative Law Judge ("ALJ") conducted a hearing on June 10, 2015, at which Plaintiff, her attorney, and a vocational expert ("VE") were present. (Administrative Record ("AR") 31-61.) In a July 7, 2015 opinion that constitutes the Commissioner's final decision, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act from January 1, 2008 through the date of the decision. The Appeals Council denied Plaintiff's request for

review on January 18, 2017. Plaintiff filed a Complaint in this Court on March 20, 2017, seeking review of the Commissioner's denial of her applications for benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. This matter now is ready for decision.

## DISPUTED ISSUES

As reflected in the parties' memoranda, the disputed issues are as follows:

1. Whether the ALJ failed to resolve the conflict between the Vocational Expert's testimony and the Dictionary of Occupational Terms ("DOT").

2. Whether the ALJ improperly rejected the opinion of treating physician Patrick Thompson, M.D.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

///

///

**THE ALJ'S DECISION**

The ALJ's decision includes the following findings. Plaintiff had not engaged in substantial gainful activity since January 1, 2008, her alleged onset date. Plaintiff had the following severe impairments: depression, anxiety, somatoform disorder, degenerative disc disease of the cervical and lumbar spine, hepatitis C, aphthous ulcer, fibromyalgia, bursitis, radiculopathy, migraines, chronic fatigue, irritable bowel syndrome, and insomnia. Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Plaintiff retained the residual functional capacity ("RFC") to lift or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday with normal breaks and with use of a cane as needed; frequently climb stairs but never climb ladders, ropes or scaffolds; frequently bend, stoop, kneel, crouch or crawl; perform occasional over the shoulder reaching, bilaterally; perform no extreme motions of the head such as looking over the shoulder; and to the perform only simple and routine tasks. Given that RFC, Plaintiff was incapable of performing her past relevant work as a Real Estate Agent, Sales/Advertising Representative, and Technical Consultant. Based on the opinion of the VE, the ALJ concluded that Plaintiff's RFC did not preclude her from performing jobs that exist in significant numbers in the national economy, specifically Storage Facility Clerk and Cashier. Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 18-26).

**DISCUSSION**

**1.  Whether the ALJ failed to resolve a conflict between the VE's Testimony and the DOT.**

At step five, the ALJ has the burden of establishing, through the testimony of a VE or by reference to the Medical–Vocational Guidelines, that the claimant can perform alternative jobs that exist in substantial numbers in the national economy. *See Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th Cir. 2016); *Bruton v. Massanari*,

268 F.3d 824, 827 n.1 (9th Cir. 2001). When using the testimony of a VE at step five, "the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-1163 (9th Cir. 2001).

The Commissioner "routinely relies" on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); *see Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the [DOT]."). Should an "apparent or obvious" conflict arise between a VE's testimony regarding the claimant's ability to perform alternative jobs and the DOT's description of those jobs, the ALJ must ask the VE "to reconcile the conflict" and must determine whether the VE's explanation is reasonable before relying on the VE's testimony. *Gutierrez*, 844 F.3d at 807, 808; *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p, 2000 SSR LEXIS 8). An ALJ may rely on VE testimony that contradicts the DOT only insofar as the record contains persuasive evidence to support the deviation. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Here, in assessing Plaintiff's RFC, the ALJ stated that "[Plaintiff] is limited to the performance of simple routine tasks." (AR 20.) The ALJ concluded ─ relying on the VE's testimony ─ that given her RFC, Plaintiff could not perform her past relevant work as a Real Estate Agent (DOT 250.357-018), Sales/advertising Representative (DOT 254.357-014) and Technical Consultant (DOT 032.262-010). (AR 24.)

At the hearing, the VE testified that a claimant with Plaintiff's RFC could perform alternative work in the economy as a Storage Facility Clerk (DOT 295.367-026), and as a Cashier (DOT 211.462-010). (AR 54-55.) According to the DOT, the occupations of Storage Facility Clerk and Cashier both require Reasoning

Level 3, which entails the following abilities: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." (DOT 295.367-026; DOT 211.462-010). Based on the VE's conclusion, the ALJ found that Plaintiff could perform other work that exists in the national economy. (AR 25.)

Plaintiff argues that a limitation to "simple routine tasks" indicates she is limited to Level 2 Reasoning, and therefore, there is an inherent inconsistency between her RFC and the requirements of Level 3 Reasoning.[1] Plaintiff further argues that the ALJ erred by relying upon the VE's testimony without resolving the conflict between that testimony and the DOT.[2]

As a matter of law, an apparent conflict exists between Plaintiff's RFC limitation to "simple, routine, repetitive tasks" and the VE's testimony that a person with Plaintiff's RFC could perform jobs requiring a Reasoning Level 3 under the DOT. The ALJ's failure to resolve the conflict constituted legal error. *See Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015) (ALJ erred by failing to resolve apparent conflict between claimant's RFC limitation to simple, routine, and repetitive work and the jobs the ALJ concluded claimant could perform, which the DOT indicated required a Reasoning Level 3).

---

[1] The DOT defines Reasoning Level 2 as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." (DOT 979.687-034.) It defines Reasoning Level 3 as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."

[2] The Court rejects the Commissioner's argument that Plaintiff waived this argument. The failure to raise a conflict during the hearing does not constitute a waiver because the ALJ retains an affirmative duty to reconcile apparent conflicts between the VE and the DOT through testimony. *See Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017).

Nevertheless, the ALJ's decision will not be reversed if the error was harmless. Thus, the Court must determine whether the ALJ's failure to resolve the apparent conflict left "a gap in the record that precludes [the court] from determining whether the ALJ's decision is supported by substantial evidence." *Zavalin*, 778 F.3d at 846, 848.

In *Zavalin,* the Ninth Circuit examined the DOT definitions of the jobs identified by the ALJ and concluded that evidence that the claimant had graduated high school and did well in math class was insufficient to support a finding that the claimant could perform jobs requiring Reasoning Level 3. In reaching its decision, the Court considered that the record showed that the claimant was found disabled as a child based on severe impairments including cerebral palsy, a learning disorder, and a speech impairment; had been enrolled in special education classes and in mainstream classes with accommodations for his impairments; received a modified high-school diploma due to his special education status; and had no past relevant work. *Zavalin*, 778 F.3d at 844, 847-48. Although the Ninth Circuit acknowledged that the claimant's use of computers and video games might show that he was capable of performing those jobs, the Court of Appeals concluded that it could not rely on that evidence on appeal because the ALJ had not done so, and that even if such evidence were considered, there was "no indication of the extent or manner of [the claimant's] computer use, or the complexity of the video games" that would demonstrate the requisite reasoning ability. *Zavalin*, 778 F.3d at 848.

Unlike *Zavalin*, the record here is sufficient for the Court to conclude that the error was harmless. *See Bordbar v. Astrue*, 475 Fed. Appx. 214, 215 (9th Cir. 2012 (finding harmless error from a DOT/reasoning conflict because the record showed the claimant could perform jobs at Reasoning Level 2); *Musser v. Colvin*, 2015 WL 4460677, at *9 (E.D. Cal. July 21, 2015) (applying *Zavalin* and finding harmless error where the record showed that claimant could perform Reasoning Level 3 work); *Watkins .v Comm'r of Social Sec. Admin.*, 2016 WL 4445467, at *8 (D. Or.

Aug. 22, 2016) (applying *Zavalin* and finding ample evidence in record that ALJ failure to reconcile the VE's testimony with DOT was harmless). To begin with, the ALJ specifically relied upon evidence demonstrating that Plaintiff suffered from no significant mental impairment. As the ALJ noted, both Dr. Parikh and Dr. Mourot opined that Plaintiff did not have any significant mental impairment. (AR 23, 71, 509-510.)

Second, unlike the claimant in *Zavalin*, Plaintiff was not enrolled in special education classes. Rather, Plaintiff had completed two years of college at the time of her application. (AR 39.) Under the Commissioner's regulations, completing "high school or above" means that a claimant has "abilities in reasoning . . . acquired through formal schooling at a 12th grade level or above," and the Commissioner will "generally consider that someone with these educational abilities can do semi-skilled through skilled work." 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4).

Third, again unlike the claimant in *Zavalin*, Plaintiff had previous work experience as a real/estate agent, technical consultant, and sales/advertising agent. (AR 24, 35, 168-79, 217.) The DOT classifies these jobs as requiring Reasoning Level 4. Even assuming that Plaintiff's mental impairments diminished her work-related functional capacity after her alleged onset date, her ability to perform jobs requiring a higher reasoning level in the recent past suggests that she likely retains the ability to perform some Level 3 reasoning jobs.

Considering the well-developed evidence regarding Plaintiff's actual level of intellectual functioning, the Court determines that the ALJ's failure to resolve the conflict between the VE's testimony and the DOT was harmless because these factors establish that Plaintiff could perform a job requiring Reasoning Level 3.

**2.** **Whether the ALJ properly rejected the opinion of the treating physician.**

The ALJ cited two reasons for rejecting the opinion of Dr. Thompson, Plaintiff's treating physician: (1) Dr. Thompson's opinion was inconsistent with the

7

level of functional ability documented in physical examination, and (2) evidence of effective results of conservative treatment modalities. (AR 23.) After careful review, the Court concludes that these reasons were specific and legitimate, and were supported by substantial evidence in the record.

Regarding the first reason, Plaintiff contends that the reason given by the ALJ was not sufficiently specific because the ALJ failed to identify a particular examination contradicting Dr. Thompson's opinion. Plaintiff's argument is unpersuasive. In concluding that Plaintiff's physical examinations did not support Dr. Thompson's assessment of Plaintiff's limitations, the ALJ noted physical examinations conducted by both Dr. Thompson and other physicians, each of which undermined the assessment provided by Dr. Thompson. (AR 20-23.)

Specifically, the ALJ addressed several examinations conducted by Dr. Thompson between June 2010 and September 2012. (AR 21.) For example, in August, 2010, Plaintiff reported to Dr. Thompson that her lower back pain was being effectively controlled through the use of medication. (AR 21, 344.) Further, Dr. Thompson's notes regarding examinations of Plaintiff through September, 2012 do not indicate that Plaintiff experienced any substantial change in physical condition. (AR 329-47.)

The ALJ also noted that on January 25 2013, Dr. Singh found Plaintiff had "limited range of motion but otherwise good strength." (AR 21, 296-98.) And the ALJ pointed out that in a follow-up appointment on February 26, 2013, Plaintiff experienced positive results from her treatment, reporting that her hip pain had been resolved and that her back pain and range of motion were significantly improved. (AR 21, 267-70.)

The ALJ discussed Dr. Thaiyananthan's July 2013 examination, during which he administered an epidural steroid injection. (AR 22, 540-43.) In a follow-up appointment in September 2013, Plaintiff reported to Dr. Thaiyananthan that she experienced a 50% improvement in her back pain but still had some neck pain. (AR

532-34.) Plaintiff received a referral for another injection. (AR 533.) As the ALJ noted, at Plaintiff's follow up appointment in November 2013 — one month before Dr. Thompson completed his RFC questionnaire — Plaintiff reported to Dr. Thaiyananthan that the treatment was effective, and said that her residual back and neck pain were generally mild. (AR 21, 552.)

In addition, the ALJ discussed Dr. Elkhoury's October 2014 evaluation, after which he placed the Plaintiff on a conservative exercise program. (AR 22, 672-76.) In a follow up appointment in March 2015, Plaintiff reported benefitting from physical exercise. (AR 677.)

Further, the ALJ noted a physical examination conducted by Dr. Godes in February 2015 wherein Dr. Godes determined that Plaintiff retained full strength, slow but adequate gait, and other than reduced range of motion in lumbar spine, no limitation in lower extremities; Plaintiff again reported effective relief from injections and stated she only needed occasional use of a non-prescribed cane. (AR 22, 514-19.)

Last, the ALJ considered that during an examination by Dr. Mikhail in April 2015, Plaintiff reported that her low back pain was controlled with medication and injections. (AR 23, 570-72.)

After providing an extensive summary of Plaintiff's medical record, the ALJ determined Dr. Thompson's RFC questionnaire was inconsistent with the level of functional ability documented in physical examination. This inconsistency constitutes a specific reason supported and legitimate reason for the ALJ to disregard the testimony of Dr. Thompson. *See, e.g., Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001) (ALJ did not err in rejecting various statements by treating physician because they were internally inconsistent and not supported by any findings made by any physician, including the treating physician); *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ properly rejected treating

physician's opinion as unsupported by rationale, objective medical findings, treatment notes, or clinical observation).

Regarding the second reason proffered by the ALJ, Plaintiff contends that Plaintiff's treatment regimen was not conservative because surgery was recommended on June 5, 2013 and because Plaintiff received four epidural injections, along with physical therapy and pain medication. In support of her argument, Plaintiff relies on *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014). In *Garrison*, the Ninth Circuit held that the ALJ erred by relying on the claimant's conservative treatment to discredit her subjective complaints of pain. Specifically, the Court of Appeals concluded that the record belied the ALJ's conclusion that the claimant obtained relief from her symptoms through conservative treatment. Instead, the Court explained that the records "make clear that epidural shots never provided [claimant] any relief for her neck pain, and that they relieved [claimant]'s back pain for only variable, brief periods of time, ranging from a couple of months to a few days. The other treatments prescribed by Wang, including pain pills, caused side effects including intense sleepiness and drowsiness and, even when taken several times per day, provided only limited periods of relief from the otherwise-constant pain." *Garrison*, 759 F.3d at 1015.

Plaintiff's arguments and the reliance upon *Garrison* are unavailing. Though it was recommended, Plaintiff opted to forego surgery and instead received an epidural injection to manage her pain. (AR 285.) Subsequently, Plaintiff reported that she experienced a 50% improvement in her symptoms as a result of the epidural. (AR 532.) Furthermore, Plaintiff testified in November 2013 that her hip pain had been cured and that her back and neck pain were generally mild. (AR 552.) Plaintiff's medical record confirms that epidural injections effectively addressed Plaintiff's symptoms.

Generally, epidural injections alone do not constitute non-conservative treatment. *See Hydat Yang v. Colvin*, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20,

2015). Treatment is properly considered conservative even when a claimant's use of epidural injections is paired with use of narcotic pain medication, especially where such treatment proved effective in alleviating the claimant's symptoms. *See Zaldana v. Colvin*, 2014 WL 4929023, at *2 (C.D. Cal. Oct. 1, 2014) (holding that a treatment regimen including Tramadol, ibuprofen, and "multiple steroid injections" was "a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination because the record reflects that plaintiff was treated on the whole with conservative care for her foot pain with good results and improvement."); *see also Huizar v. Comm'r of Social Sec.*, 428 Fed. Appx. 678, 680 (9th Cir. 2011) (finding that plaintiff responded favorably to conservative treatment, which included "the use of narcotic/opiate pain medications"); *see also Martin v. Colvin*, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) ("[T]he fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods").

Thus, unlike the claimant in *Garrison*, the record here supports the conclusion that Plaintiff's treatment has been generally effective at addressing Plaintiff's pain. As discussed previously, the ALJ pointed to multiple instances in which Plaintiff reported the effectiveness of her treatments, both the epidural shots and her exercise regimen. As such, there is sufficient evidence from which the ALJ could determine that the treatment was both conservative, and effective at addressing Plaintiff's symptoms.

In sum, the Court concludes that the ALJ provided specific and legitimate reasons based in substantial evidence to support her decision to reject Dr. Thompson's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035 (9th Cir. 2008) (holding that a treating physician's opinion was properly discounted where it was based primarily on claimant's subjective complaints, and where the physician's

questionnaire responses were not supported by the medical record); *see also Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . or by objective medical findings"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

\* \* \* \*

IT THEREFORE IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner of Social Security.

DATED: 3/15/2018

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE